IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | No. 25-cr-72-APM |
| v. | ) | |
| | ) | |
| **JOSEPH MICHAEL THOMPSON** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO SUPPRESS

Defendant Joseph Michael Thompson, by and through undersigned counsel, respectfully moves this Court to suppress all evidence derived from the warrantless seizure and search of his person by members of the Metropolitan Police Department on March 7, 2025. This case arises out of a police encounter with Mr. Thompson as he walked out of a commercial establishment – South Capitol Liquor Store, located at 4654 Livingston Road, SE Washington, D.C.

During this encounter, law enforcement came to believe that Mr. Thompson was in possession of a firearm. In the absence of probable cause to support an arrest and without reasonable articulable suspicion that Mr. Thompson was engaged in criminal activity, the officers violently seized Mr. Thompson by grabbing at him and then tackling him to the ground. During the seizure, a firearm became dislodged from Mr. Thompson's person and slid to the roadway. A further

search of Mr. Thompson's person revealed a ¾ full ounce vial containing suspected phencyclidine. After arresting Mr. Thompson, members of law enforcement questioned him and elicited statements without having advised him of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966).

The seizure and search of Mr. Thompson violated his Fourth Amendment rights because law enforcement did not possess probable cause or reasonable suspicion to seize him. Members of law enforcement violated Mr. Thompson's Fifth Amendment rights by interrogating him while he was in custody without first providing the legally required warnings. Accordingly, Mr. Thompson moves to suppress all evidence, including any statements made by Mr. Thompson, arising from the events of March 7, 2025.

## I. Background

On March 7, 2025, members of the Metropolitan Police Department's Robbery Suppression Unit initiated an encounter with Mr. Thompson as he was walking out of South Capitol Liquor Store, located at 4654 Livingston Road, SE Washington, D.C. The officers did not respond to that location as a result of a specific call for service, but rather for general concerns of crime in the area over the last six months. *See* Exhibit A. Much of the encounter is captured on body worn camera footage.

At that time, law enforcement allegedly observed Mr. Thompson exhibit the

following behavior deemed suspicious by officers:

- Joseph Thompson was standing in front of South Capitol Liquor Store;

- As law enforcement entered the block, Mr. Thompson entered the liquor store;

- Officer Guzman followed Mr. Thompson into the liquor store where Mr. Thompson was observed making a commercial transaction with the store clerk;

- Mr. Thompson then exited the liquor store with a black bag and was immediately followed out by Officer Guzman;

- According to law enforcement, the bag Mr. Thompson carried "did not appear to be substantially heavy; however, the Defendant's right arm was pressed against his body, as he attempted to keep his unzipped black coat closed from blowing open." *See* Exhibit A;

As Mr. Thompson casually walked away from the storefront, Officer Guzman followed him and called out: "Sir! Hey sir!" Mr. Thompson responded, looking back towards Officer Guzman: "Huh?" Officer Guzman continued: "How's it going, man? Everything good with you?" Mr. Thompson responded, "I'm good," and kept walking. Officer Guzman persisted: "How have you been? Hey, your right side man looks kind of heavy. Come here." Officer Todd began

following Mr. Thompson as well. The screenshot below depicts the two officers following Mr. Thompson as he walked away from the liquor store.



Mr. Thompson turned and expressed confusion over the officer's comments regarding his right side. At that point, with two officers following him, Mr. Thompson began to run away from the officers who accosted him as he left the store. The officers chased Mr. Thompson a short distance. Officer Todd grabbed onto Mr. Thompson's jacket in an effort to stop him.



Mr. Thompson was immediately apprehended by law enforcement just a few paces away from where he began to run. At that time members of law enforcement grabbed Mr. Thompson by the arm and violently swung him around, slamming his body to the pavement before handcuffing him.

The officers' seizure of Mr. Thompson was so violent that in the process of swinging him to the ground personal property flew from his person onto the pavement. This property included paper currency as well as the firearm charged in this case.[1]

During a further search after the arrest of Mr. Thompson, law enforcement recovered a ¾ full ounce vial of suspected phencyclidine.

While handcuffed and surrounded by the police, members of law

---

[1] After he was handcuffed, officers swung Mr. Thompson's body and lifted it to stand him up. In doing so, the officers nearly caused his body to collide with that of another officer. Officer Wershbale recognized the unnecessary violence and force with which the officers acted, remarking: "Jeez, jeez, jeez, jeez! Good Lord."

enforcement asked Mr. Thompson questions and elicited answers from him without first advising him of his rights pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). For example, at approximately 5:53:37 p.m., while Mr. Thompson was handcuffed and under arrest and without having advised Mr. Thompson of his rights as required by *Miranda*, Sergeant Possinger asked Mr. Thompson whether he was a convicted felon. Mr. Thompson responded: "Yes, I am."

As noted above, the events surrounding the warrantless search and seizure of Mr. Thompson were recorded on police body worn cameras. The Government claims that members of law enforcement observed Mr. Thompson "tossing a firearm from his right hand towards the street." *See* Exhibit A. However, the body worn camera footage produced in discovery *does not* show Mr. Thompson throwing a firearm. To the contrary, the body worn camera footage shows an officer grabbing Mr. Thompson's jacket and then grabbing his right arm and violently swinging him to the ground, causing personal effects to fly off his person.

A motions hearing in this case is scheduled for July 23, 2025 at 9:30 a.m.

II. **Legal Standard**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It bears emphasizing that "searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per*

*se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions." *United States v. Vinton*, 594 F.3d 14, 19 (D.C. Cir. 2010) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). Indeed, "[a] warrantless search is the quintessential intrusion and is presumptively unreasonable." *United States v. Peyton*, 745 F.3d 546, 552 (D.C. Cir. 2014). "When a defendant establishes that he was arrested or subjected to a search without a warrant, the burden then shifts to the government to justify the warrantless search." *United States v. Williams*, 878 F. Supp. 2d 190, 197 (D.D.C. 2012) (collecting cases).

An officer may stop and briefly detain a person for investigative purposes when there is "reasonable suspicion," based on articulable facts, that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A warrantless arrest, however, is permitted only when there is probable cause to believe a crime is being or has been committed by the arrested individual, based upon "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Generally, evidence seized as a result of an illegal search or seizure is subject to exclusion. *See, e.g.*, *Wong Sun v. United States*, 371 U.S. 471 (1963); *United States v. Weaver*, 808 F.3d 26, 33 (D.C. Cir. 2015).

The "central inquiry" when determining whether a Fourth Amendment

violation has occurred involves an assessment of "the reasonableness of the particular governmental invasion of a citizen's personal security." *California v. Hodari D.*, 499 U.S. 621, 636 (1991) (quoting *Terry*, 392 U.S. at 19).

A person is considered seized when an "officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and quotation marks omitted). As the Supreme Court held in *Torres v. Madrid,* "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." 592 U.S. 306, 325 (2021).

While the Constitution permits seizures in the form of temporary investigative detentions that may not rise to the level of an arrest (*Terry* stops), the specific and articulable facts in question must give rise to the reasonable suspicion that a crime was being committed. *See Terry*, 392 U.S. at 22. A search as implicated by the Fourth Amendment can range from an intensive, full-blown search to a "limited search of the outer clothing for weapons" – a frisk. *Terry*, 392 U.S. at 24. The determination of whether such a frisk is reasonable weighs the individual's constitutionally-protected right to personal security against law enforcement's interest in protecting themselves from concealed weapons. *See Terry*, 392 U.S. at 26–27. For a law enforcement officer's belief that a frisk is necessary to be reasonable, the officer must be able to point to specific and

articulable facts which warrant a belief that that officer is dealing with an armed and dangerous individual. *Terry*, 392 U.S. at 27. The reasonableness inquiry should not give weight to an "inchoate and unparticularized suspicion or hunch" of the officer, but consider the "specific reasonable inferences which he is entitled to draw from the facts" before him. *Terry*, 392 U.S. at 27.

As noted above, a warrantless arrest is lawful only where it is "based upon probable cause to believe that a crime was being committed." *United States v. Wesley*, 293 F.3d 541, 545 (D.C. Cir. 2002). "Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense." *Id*. (citations omitted). "Probable cause is a higher standard than that required for *Terry* stops." *United States v. Belton*, No. 18-246 (RMC), 2019 U.S. Dist. LEXIS 24995, at *9 n.10 (D.D.C. Feb. 15, 2019) (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *see also United States v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007) (noting that the standard for reasonable suspicion is "significantly lower" than that of probable cause).

Here, members of law enforcement *speculated* that Mr. Thompson may have been carrying a firearm, but that speculation did not amount to probable cause for an arrest, nor was it based on specific, articulable facts sufficient to justify a Fourth

9

Amendment *Terry* seizure. After the officers chased Mr. Thompson and grabbed him, he was seized and arrested without lawful justification. Under these circumstances, the seizure and search of Mr. Thompson violated the Fourth Amendment. All evidence derived from the seizure and search must be suppressed.

III. **Argument**

The evidence in this case must be suppressed as the fruit of the unlawful arrest and search of Mr. Thompson. The officers had no warrant and insufficient probable cause or reasonable suspicion to search, detain, and arrest Mr. Thompson. No exception to the Fourth Amendment's warrant requirement applies. All of the evidence at issue in this case was obtained directly from an unconstitutional search, seizure, and arrest, and therefore should be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (holding that if the evidence has been obtained through the exploitation of a Fourth Amendment violation, the evidence must be suppressed). When officers seized and searched Mr. Thompson, they did not have "specific and articulable facts" that he was engaging in criminal activity. *Terry* 392 U.S. 1 at 21-22, 30.

## Mr. Thompson Was Unlawfully Seized & Searched

In this case, officers seized Mr. Thompson without legal justification and in this absence of a warrant. Neither probable cause nor reasonable articulable suspicion existed to support the seizure, which began when an officer applied

physical force and grabbed Mr. Thompson by his jacket and continued as he was thrown on the ground and handcuffed. Moreover, there was no lawful basis to search Mr. Thompson. There were no facts that would lead law enforcement to conclude that Mr. Thompson was armed and dangerous. All evidence derived from the unlawful search and seizure should be suppressed.

Law enforcement claims that Mr. Thompson threw a firearm during his flight from the police. However, the body worn camera footage *does not* show this action. It does, however, show law enforcement grabbing Mr. Thompson first by the jacket and then by the arm and throwing him to the ground causing personal property to fly off his person. Accordingly, this case is unlike *United States v. Meekins*, No. 18-cr-00222 (APM), 2019 U.S. Dist. LEXIS 135955 (D.D.C. Aug. 13, 2019), a recent case in which this Court denied a motion to suppress where the defendant *tossed* a firearm after officers got out of their car and began to approach him but before the officers seized him when they directed him to spread his legs and submit to pat down. Here, the gun became dislodged *after* an officer had already applied physical force to Mr. Thompson in an effort to restrain his movement and in the absence of probable cause for an arrest or reasonable suspicion for a *Terry* stop. *See, e.g.*, *United States v. McCray*, 148 F. Supp. 2d 379, 391-92 (D. Del. 2001) (granting motion to suppress where officers stopped the defendant without reasonable suspicion and the Government failed to establish that

the defendant voluntarily abandoned the firearm before a scuffle broke out).

Mr. Thompson was unlawfully searched following his arrest by law enforcement. Because law enforcement had no lawful reason to stop or arrest Mr. Thompson, the subsequent search of his person was also unlawful. The protections offered by the Constitution are fundamental to our ordered society. Those protections safeguard against unjustified police intrusion. Under the exclusionary rule, the Court must suppress any evidence derived from the unconstitutional search and seizure of Mr. Thompson.

### The Post-Arrest Statements of Mr. Thompson Were Obtained in Violation of *Miranda*

After he was arrested and handcuffed, Mr. Thompson was questioned by law enforcement and made statements in response. "Before a suspect in custody is interrogated, [he] must be advised of [his] *Miranda* rights. If the interrogating officers do not provide *Miranda* warnings, any statements the suspect makes are generally inadmissible at trial. The obligation to apprise the suspect of [his] rights attaches only where there has been such a restriction on a person's freedom as to render [him] in custody." *United States v. Cooper*, 949 F.3d 744, 748 (D.C. Cir. 2020) (citations and quotations omitted). Here, Mr. Thompson was not advised of his *Miranda* rights prior to being questioned by members of law enforcement as he was handcuffed and surrounded by police officers at the scene of his arrest. These

circumstances render any post-arrest statements made by Mr. Thompson inadmissible.

## IV. Evidence Derived from the Unlawful Warrantless Search and Seizure Must be Suppressed

As a result of the violation of Mr. Thompson's Fourth Amendment right to be free from unreasonable searches and seizures, this Court should suppress the fruits of the March 7, 2025 warrantless search and seizure and any evidence derived therefrom, to include any statements made by Mr. Thompson and any evidence recovered from the search of Mr. Thompson. *E.g.*, *Wong Sun v. United States*, 371 U.S. 471 (1963).

## V. Conclusion

Law enforcement seized and searched Mr. Thompson without probable cause or reasonable suspicion and without a particularized belief that he was armed and dangerous. These actions violated Mr. Thompson's Fourth Amendment rights, and any evidence obtained as a result of the violation must be suppressed.

Respectfully submitted,

/s/
_____
Nicholas G. Madiou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane
Suite 700
Greenbelt, Maryland 20770
301.474.0044
nmadiou@brennanmckenna.com

*Counsel for Defendant Joseph Thompson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 25, 2025, a copy of the foregoing was sent to the United States Attorney's Office for the District of Columbia, via ECF.

/s/
_____
Nicholas G. Madiou