IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 25-cr-072-APM |
| | : | |
| JOSEPH MICHAEL THOMPSON | : | |
| | : | |
| Defendant. | : | |

### REPLY IN SUPPORT OF MOTION TO SUPPRESS

On June 25, 2025, Defendant Joseph Thompson ("Mr. Thompson") filed a Motion to Suppress (ECF No. 21) the fruits of the March 7, 2025 warrantless search and seizure of his person by members of the Metropolitan Police Department. Mr. Thompson also moved to suppress statements obtained from him by members of law enforcement at the scene of the arrest. On July 10, 2025, the Government filed a Memorandum in Opposition. (ECF No. 23.) A motions hearing is scheduled for July 23, 2025. Defendant Joseph Thompson, by and through his counsel, Nicholas G. Madiou, and Brennan, McKenna & Lawlor, Chtd., respectfully submits this Reply in support of his Motion to Suppress.

1

## I. The Government's Red Herring

In its attempt to satisfy its burden to justify the "presumptively unlawful"[1] warrantless seizure of Mr. Thompson, the Government responds to an argument Mr. Thompson *did not raise*. The Government devotes more than half of its response to refuting the hypothetical argument that Mr. Thompson was seized when officers approached him outside of the liquor store and began accosting him. *See, e.g.*, ECF No. 23 at 10 ("In this case, and as outlined in the facts above, there will be no evidence that the officers seized the defendant as the officers approached the defendant prior to the defendant running away as officer [sic] approached him"). The Government's response misses the mark. In his Motion, Mr. Thompson made clear that he was seized for Fourth Amendment purposes at the moment Officer Todd grabbed him by the jacket. *E.g.*, ECF No. 21 at 1 (". . . the officers violently seized Mr. Thompson by grabbing at him and then tackling him to the ground); *id*. at 10-11 ("Neither probable cause nor reasonable articulable suspicion existed to support the seizure, which began when an officer applied physical force and grabbed Mr. Thompson by his jacket and continued as he was thrown on the ground and handcuffed."); *id*. at 11 ("Here, the gun became dislodged *after* an officer had already applied physical force to Mr. Thompson in an effort to restrain his movement and in the absence of probable cause for an arrest or reasonable suspicion for a *Terry*

---

[1] *United States v. Most*, 876 F.2d 191, 193 (D.C. Cir. 1989) (emphasis removed).

stop."). Mr. Thompson did not argue that the seizure occurred at any time before the application of physical force to his body.

The Supreme Court has held that "the application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued." *Torres v. Madrid*, 592 U.S. 306, 325 (2021). Without legal justification, Officer Todd grabbed Mr. Thompson by his jacket – which he was wearing on his body – in an effort to stop his movement. *After* Officer Todd grabbed Mr. Thompson and began manipulating his body, a firearm became dislodged and fell to the ground. The conduct of law enforcement violated Mr. Thompson's Fourth Amendment right to be free from unreasonable searches and seizures. The Government will not be able to meet its constitutional burden to prove otherwise. The Court should therefore grant the Motion to Suppress.

## II. The Government Has Not and Cannot Meet Its Burden to Justify the Warrantless Seizure of Mr. Thompson

"[W]hen, like here, a defendant produces evidence that he was arrested or subjected to a search without a warrant, the burden shifts to the government to justify the warrantless arrest or search." *United States v. Hassanshahi*, 75 F. Supp. 3d 101, 108 (D.D.C. 2014).[2] This case presents a clear factual dispute. The Government

---

[2] In failing to argue otherwise, the Government concedes that the officers seized and searched Mr. Thompson without a warrant.

3

alleges that while running from Officers Todd and Guzman, Mr. Thompson threw a firearm and that Officer Todd grabbed Mr. Thompson only after he had allegedly thrown the firearm. The Government has come forward with no evidence to support this claim. Mr. Thompson, who has no burden, asserts that after running from the two officers who were accosting and following him as he innocently went about his business, he was grabbed and physically manipulated by Officer Todd, at which point a firearm became dislodged and fell to the ground. Mr. Thompson's account is supported by objective evidence: the body-worn camera footage.

The Government's Fourth Amendment analysis ends where it begins: the unsupported allegation that Mr. Thompson abandoned the firearm by tossing it before Officer Todd made physical contact with him. "The government bears the burden of showing abandonment." *United States v. Burnett*, No. 24-1443, 2025 U.S. App. LEXIS 312, at *4 (7th Cir. Jan. 7, 2025). *See also, e.g.*, *United States v. Rahmings*, No. 23-12931, 2024 U.S. App. LEXIS 18919, at *5 (11th Cir. July 31, 2024) ("The government bears the burden of proving abandonment.") The Government falls far short of that burden. As an initial matter, the Government does not dispute Mr. Thompson's argument that "the body worn camera footage produced in discovery *does not* show Mr. Thompson throwing a firearm." (ECF No. 21 at 6 (emphasis in original).) Additionally, the Government has still not identified by name the officer or officers who claim to have seen Mr. Thompson toss a firearm.

*E.g.,* ECF No. 23 at 3 ("Officers then observed THOMPSON tossing a firearm . . ."); *id*. at 9 ("Officers then observed the defendant tossing a firearm . . ."). The lack of specificity is striking in light of the fact that the Government's response identifies other officers by name when describing the actions they took. *E.g.*, ECF No. 23 at 2 ("Investigator Todd then observed Investigator Guzman exit out of the store"); *id*. ("Investigator Guzman made a comment"). The Government's inability to identify the officer who claims to have seen Mr. Thompson toss a firearm distinguishes this case from a recent case in which this Court found abandonment. *See, e.g.*, Government's Amended Opposition to Defendant's Motion to Suppress Physical Evidence, *United States v. Meekins*, No. 18-cr-222-APM, ECF No. 17 at 2 ("Officer Hiller observed the defendant remove an object from his waistband and toss it near the tire area of the SUV.").

Moreover, Officer Todd, the officer who initiated the seizure of Mr. Thompson by grabbing him, swore out the Gerstein affidavit in this matter. (ECF No. 21-1.) Notably, in the affidavit, Officer Todd does not claim to have personally seen Mr. Thompson toss a firearm. Instead, he offers the nonspecific assertion that "[m]embers then observed" the alleged tossing. (ECF No. 21-1 at 3.) As best Mr. Thompson can tell from the body-worn camera footage, neither Officer Todd nor Officer Guzman claimed at the time of the seizure to have seen Mr. Thompson toss a firearm. In light of the Government's failure to provide any evidence to

5

substantiate the claim that unspecified "members" observed the alleged tossing – an allegation unsupported by the body-worn camera footage – this Court should conclude that the Government has not met its burden to prove abandonment, the sole exception to the warrant requirement advanced in the Government's response.

### III. The Court Should Suppress Mr. Thompson's Statements

In his Motion, Mr. Thompson made clear that he sought the suppression of his post-arrest statements, which were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), because officers interrogated him while he was handcuffed and under arrest. The Government did not respond to this aspect of the Motion. Accordingly, the Court should treat the suppression argument as conceded and grant the relief requested.

### CONCLUSION

For the reasons stated in Mr. Thompson's Motion, those set forth above, and those to be presented at the motions hearing, this Court should grant Mr. Thompson's Motion to Suppress.

Respectfully submitted,

_____/s/_____
Nicholas G. Madiou
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of July, 2025, the foregoing was served on all parties via ECF.

\_\_\_\_\_/s/_____
Nicholas G. Madiou